## THE STATE v. FARRIS, *Appellant.*

### Division Two, May 21, 1895.

Appellate Practice: MURDER. The record examined on appeal from a conviction of murder in the second degree, and, no exceptions having been saved to the admission or exclusion of evidence, the instructions being in proper form and no errors appearing in the record proper, the judgment was affirmed.

*Appeal from Knox Circuit Court.*—HON. BEN E. TURNER, Judge.

AFFIRMED.

*G. R. Balthrope* and *C. R. Fowler* for appellant.

*R. F. Walker,* Attorney General, and *Morton Jourdan,* Assistant Attorney General, for the state.

(1) The indictment is sufficient. *State v. Taylor,* 126 Mo. 531; *State v. Dale,* 108 Mo. 205; *State v. Lowe,* 93 Mo. 547; *People v. Cronin,* 34 Cal. 200; *People v.*

*Stevenson,* 9 Cal. 273; *People v. King,* 27 Cal. 510; *State v. Williamson,* 106 Mo. 172. (2) No exceptions were saved or attempted to be saved to the admission or rejection of evidence. The allegations in motions for new trial do not prove themselves and the mere assertion in the motion that error was committed in admitting or excluding testimony is insufficient. *State v. Foster,* 115 Mo. 451; *State v. Welsor,* 117 Mo. 570; *State v. Musick,* 101 Mo. 260; *State v. Bulling,* 105 Mo. 226; *State v. Kennade,* 121 Mo. 405.

GANTT, P. J.—The defendant was indicted at the December term, 1894, for murder in the second degree of Lile Graves. He was duly arraigned, tried and convicted at the same term, and sentenced to ten years imprisonment in the penitentiary.

The testimony discloses that the defendant Farris was, only a short time before the difficulty, employed by and lived with the deceased. That some difficulty had arisen between them in regard to wages, and that the defendant had arranged to, and did, leave deceased's home. It is shown that a few days prior to the difficulty it was suggested to the defendant that the deceased intended loading his things into the road; that the defendant remarked that if he did he would kill him. It is shown that on the first day of October, 1894, the deceased was seen passing along the road leading to his home in Shelton township, Knox county, in a wagon; that immediately thereafter the defendant came along the road going in the same direction, following the deceased, and was seen by several witnesses, some when he was a quarter of a mile behind deceased, others at a less distance, and finally two witnesses saw him when he was about twenty-five yards behind the deceased.

Witness Wagner was engaged in picking up rails

along the road, and saw Farris, the defendant, following Graves, the deceased. When Farris came up to where Wagner was they spoke to each other, and Farris asked who the person was preceding him in the road, and was told by witness Wagner that it was old man Graves, when Farris, the defendant, replied that he wanted to see him, when witness Wagner, who had heard of the previous trouble between them, then asked defendant "Are you going to whip him," and the defendant replied that he was. The defendant then started on in the direction of the deceased, and, when the latter had gone some distance, Wagner saw him get off his pony, pick up something in the road, and start again in the direction of the deceased; soon thereafter the defendant was seen coming down the road riding his pony.

At a point where Nichols saw the defendant and the deceased there was a track made by the wagon, as if it had been suddenly pulled to the right, and there the first blood was discovered. The deceased, after being struck and injured, made his way to the residence of Mr. McLaughlin. When he arrived there both hands, his face and the side of his head were covered with blood. He was bleeding from the nose and also vomiting blood. He was taken by McLaughlin and witness Clark to his home, and died two days later. Clark and McLaughlin, upon taking him home, went back down the road traveled by the deceased, and made an examination. They found considerable blood beginning at the point where the wagon cramped. At this point a rock, which was afterward identified by two witnesses, was picked up, which the physician testified exactly fit in the indentations in the skull of the deceased.

A warrant was issued for the defendant the next day after the difficulty, and upon its being read to the defendant, he stated to the constable in the presence

of Miss Rector that "he did not hit Graves with anything but his fist." To a Miss Overton the defendant said, soon after the difficulty, that he had a fight with the deceased; that the deceased attempted to get out of the wagon, and struck and kicked the defendant, and that he, the defendant, struck the deceased with his fist and knocked him over the wheel. The two physicians who attended the deceased both testified that in their opinion he came to his death from a wound in the left side of the head, made with a rock or some such blunt instrument; that concussion of the brain resulted, from which Graves died. Both testified, also, that they took the rock found by witness Wonderly at the scene of the difficulty and placed it in the fracture in the skull, and that the points and surface of the rock exactly fit the indentures in the skull; they testified that the wound in the head could not have been made by a kick from one of the horses.

The testimony upon the part of the defendant tended to establish a good reputation for the defendant for truth and veracity and peace and quiet; and a bad reputation for the deceased for peace and quiet; however, some of the witnesses testify that the deceased's character was good. It is also attempted to be shown by the defendant's testimony, and is so testified to by some of the witnesses, that the state's witness, Hereford, to whom the defendant made the threat that he intended to kill Graves, was drunk at the time.

The defendant testified in his own behalf. He admitted traveling along the road as testified to by state's witnesses; admitted seeing the state's witness as he rode; said that he overtook the deceased at about the point testified to by the state's witnesses; that when he overtook the deceased, Graves told him to stop; that the deceased had got out of his wagon and the defendant off of his horse; that deceased asked him if he had

sued him yet and he told him he did not owe him anything; that he (defendant) said that he did owe him; that deceased called him a liar and struck him with his fist in the chest or neck; that the deceased fell over one of the tugs behind one of the horses; that he (the defendant) got on his horse and rode away. The defendant admits the conversation with witness Hereford in which he said he intended to kill Graves. Defendant also testified that he had for some time been at work for the deceased; that they had had a difficulty and that deceased drove him away with a pitchfork.

In rebuttal, the state introduced a number of witnesses who testified that the character and reputation of the deceased for peace and quiet was good.

The appellant has filed no brief in this case and we are left to his motion for a new trial to discover the grounds of his appeal. There is not an exception to the admission or exclusion of any evidence. The indictment is in the usual and often approved form, and is sufficient. The instructions defined the law as to murder in the second degree, self-defense, reasonable doubt, and the credibility of the witnesses. It is useless to encumber the reports with their repetition. They are such as have been time and again approved by this court. There is no error in the record proper and the judgment is, therefore, affirmed. BURGESS and SHERWOOD, JJ., concur.